# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| KERRI L. AGEE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| NEWTEK BUSINESS SERVICES HOLDCO 5, INC., ADR PARTNERS, LLC d/b/a BANC-SERV PARTNERS, LLC, and a/k/a BANC-SERV PLUS, and NEWTEK BUSINESS SERVICES CORP., | ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 1:18-cv-02641-JRS-TAB

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Newtek Business Services Holdco 5, Inc. ("Holdco"), ADR Partners, LLC d/b/a banc-serv Partners, LLC ("banc-serv"), and Newtek Business Services Corp. ("Newtek"), respectfully submit this brief in reply to Plaintiff's response in opposition [ECF No. 14] ("Pl.'s Br.") and in further support of Defendants' motion to dismiss [ECF No. 10].

Plaintiff's brief does not—and cannot—remedy the many deficiencies in her claims as alleged in the Complaint. Indeed, Plaintiff's brief implicitly acknowledges the insufficiency of her allegations when: (1) she argues that her claims should be given "the benefit of imagination" and deemed to pass muster even if the allegations "seem unlikely," the proof of which "is improbable," and recovery is "very remote and unlikely" (Pl.'s Br. 2, 3, 12); (2) she relies on allegations that she asserts she could make, but has not (id. 13 n.2, 13 n.3, 16.); and (3) she advances claims that "can only be ascertained through discovery," which "will reveal whether she can continue to pursue" them (id. 4, 10, 12).

The standard on this motion to dismiss, however, is whether Plaintiff's Complaint states a legally cognizable claim. As is demonstrated in Defendants' opening brief [ECF No. 11]

("Def.'s Br.") and further below, the Complaint fails to meet this standard and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.        Plaintiff Fails to Allege a Claim Under New York Labor Law**

Defendants' opening brief demonstrated that Plaintiff cannot state a claim under N.Y. Labor Law §§ 191(1)(c), 198-c, 191(3), or 198(1-a)[1] because, among other reasons, she was banc-serv's President and Chief Executive Officer and therefore is expressly excluded from coverage under these statutes. (Def.'s Br. 11-14.) Plaintiff's brief does nothing to disturb that conclusion.

At the outset of her argument, Plaintiff incorrectly states (twice) that Defendants misstate the holding of Pachter v. Bernard Hodes Grp., Inc., 891 N.E.2d 279 (N.Y. 2008). (Pl.'s Br. 3.) This is simply not so: as Plaintiff's own citation to Pachter demonstrates, Defendants accurately reported that New York's highest court has made clear that an "executive" cannot be a "commission salesman" as those terms are used in the N.Y. Labor Law. Conceding this point, as she must, Plaintiff advances the incredible argument—which has no basis in the statute or the case law—that she was not a "true" executive and therefore may sidestep the express, statutory exclusion of executives from the definition of "commission salesman" under N.Y. Labor Law § 190(6). (Id. 3-5.) This imaginative argument is unwarranted and is belied by the very allegations in Plaintiff's Complaint.

Indeed, pursuant to the terms of the Employment Agreement, which is attached to and cited at length in the Complaint, ([ECF No. 1-2] Compl., Exh. 1), Plaintiff was employed "as an executive officer in the capacity of President and Chief Executive Officer." (Id. pmbl.) Plaintiff

---

[1] Defendants note that Plaintiff's brief contains no direct response to Defendants' arguments that the Complaint fails to state a cause of action under N.Y. Labor Law §§ 191(3) and 198(1-a). Defendants respectfully submit that the arguments set forth in their opening brief and herein demonstrate that Plaintiff's claims under these sections are deficient and must be dismissed.

was required to "render such administrative and management services to the Company and its subsidiaries … as are customarily performed by persons situated in a similar executive capacity and consistent with the duties of a President and Chief Executive Officer." (Id. ¶ 2.) Plaintiff reported directly to banc-serv's Chairman of the Board. (Id.) As compensation for performing these services as President and Chief Executive Officer, Plaintiff was paid a salary of $275,000 per year. (Id. ¶ 3.)

As the case that Plaintiff relies upon in her brief makes clear, "New York courts have looked to an employee's title when determining whether an employee qualifies as an executive under" the N.Y. Labor Law. Lauria v. Heffernan, 607 F. Supp. 2d 403, 408 (E.D.N.Y. 2009). The facts set forth above demonstrate conclusively that Plaintiff's duties were "supervisory, managerial, executive or administrative in nature" and that she is excluded from the definition of "commission salesman" under N.Y. Labor Law § 190(6).

It is insufficient for Plaintiff to suggest in her brief that "[t]he question in this case is whether Ms. Agee's 'principal activity' was consistent with her title" and that she "will demonstrate" this point at some later stage in the proceeding. (Pl.'s Br. 4.) In order to state a claim under the N.Y. Labor Law, "a plaintiff must first demonstrate that … she is an employee entitled to its protections." Lauria, 607 F. Supp. 2d at 407. Moreover, Plaintiff's assertion in her brief that she was demoted to a "salesperson with an executive's title" is not supported by the allegations in her Complaint, which amount to little more than a series of business decisions and other events with which Plaintiff disagreed. And even if these allegations were true, Plaintiff remained banc-serv's highly paid President and Chief Executive Officer. She was the company's senior executive officer, she reported directly to the Chairman of the Board, and she was required to render "administrative" and "management" services to banc-serv. There can be

no legitimate dispute that her primary activities were "supervisory, managerial, executive or administrative." Accordingly, Plaintiff cannot assert a claim under N.Y. Labor Law §§ 191(1)(c), 198-c, 191(3), or 198(1-a).

Plaintiff's attempt to rescue her claim under N.Y. Labor Law § 198-c is equally unavailing. Plaintiff's brief makes much of the fact that a recent, unreported decision by a New York federal court implied a private right of action under § 198-c.[2] (Pl.'s Br. 5.) Plaintiff, however, simply ignores Defendants' primary argument: that § 198-c expressly excludes Plaintiff from its coverage. Section 198-c provides, "[t]his section shall not apply to any person in a bona fide executive, administrative, or professional capacity <u>whose earnings are in excess of nine hundred dollars a week</u>." N.Y. Labor Law §198-c (emphasis added). Plaintiff was banc-serv's President and Chief Executive Officer, and her earnings exceeded $5,288 per week. Plaintiff's claim under § 198-c fails for this reason alone.

Because Plaintiff fails to state a cause of action under the N.Y. Labor Law, Count I of the Complaint should be dismissed.

## II. Plaintiff Fails to Allege Breach of Contract

Defendants' opening brief demonstrated that Plaintiff's allegations that she was assigned to inferior duties at banc-serv cannot support a breach of contract claim under the terms of the Employment Agreement. (Def.'s Br. 14-15.)

---

[2] Plaintiff ignores, however, the decisions by New York state courts—including New York's highest court—which were cited in the case cited in Defendants' brief, and which confirm that § 198-c is a criminal statute that does not provide a private cause of action. <u>Stoganovic v. Dinolfo</u>, 461 N.Y.S.2d 121, 123 (N.Y. App. Div. 1983), <u>aff'd</u>, 62 N.E.2d 149 (N.Y. 1984); <u>see also</u> <u>Sasso v. Vachris</u>, 482 N.Y.S.2d 875, 881 (N.Y. App. Div. 1984) ("The Court of Appeals recently indicated that no civil cause of action is to be implied from section 198-c of the Labor Law."), <u>rev'd on other grounds</u>, 484 N.E.2d 1359 (N.Y. 1985).

4

While the Complaint is vague about the alleged "actions and inactions" that Plaintiff asserts constitute a breach of contract (Compl. ¶ 79), Plaintiff's brief makes clear that Plaintiff's allegations that banc-serv diminished her "executive and managerial functions" are central to her claim (Pl.'s Br. 3). Indeed, Plaintiff asserts in her brief that "[t]he question in this case is whether Ms. Agee's 'principal activity' was consistent with her title." (Id. 4 (emphasis added); see also id. 3 (Plaintiff "was a salesperson with an executive's title; nothing more, nothing less"); id. 4 (Plaintiff's "only real job … was to sell the businesses' services"); id. 9 (Plaintiff "was cut out from banc-serv's finances" and "told … what to do and when to do it"); id. 10 (Plaintiff's "role as the President and Chief Executive Officer of banc-serv was a nullity").)

However, even if Plaintiff were correct that, as her Employment Agreement was nearing the end of its term, there were discussions concerning changing the focus of her efforts in the future, such allegations would not constitute a breach of the Employment Agreement pursuant to its terms. Plaintiff's demotion or reassignment—even if true—would potentially serve as grounds that would permit Plaintiff to resign her employment for "Good Reason," but any such demotion or reassignment would not serve as grounds that would permit Plaintiff to assert a "material breach" of the contract. (Def.'s Br. 14; Compl., Exh. 1 ¶ 1(g)(i)-(ii).)

Plaintiff argues (without citation) that this plain reading of the terms of the Employment Agreement would cause a contractual definition to "change the basic tenets of a breach of contract action." (Pl.'s Br. 6.) This is simply not so. Rather, the terms of the Employment Agreement make clear that Plaintiff's alleged assignment to inferior duties cannot support a claim for material breach of contract without rendering other terms in the contract superfluous or meaningless. Plaintiff implicitly concedes as much by pointing to other allegations in her Complaint, but she cannot change the fact that Plaintiff's demotion allegation is central to her

breach of contract claim and is the foundation upon which her other breach of contract allegations depend.

Plaintiff has failed to allege a breach of contract, and Count II of the Complaint should be dismissed.

**III.     Plaintiff Fails to Allege Any Basis to Pierce the Corporate Veil**

Defendants' opening brief demonstrated that Plaintiff's Complaint does not contain any factual allegations from which a Court could conclude that the "exceptional circumstances" required to pierce the corporate veil are present here. (Def.'s Br. 15-18.) Plaintiff's brief only reinforces that Plaintiff cannot allege any of the elements necessary to disregard banc-serv's corporate existence and hold Newtek liable for banc-serv's acts.

First, Plaintiff's brief attempts to sidestep the fact that it is Plaintiff who is ignoring banc-serv's corporate formalities. Plaintiff has no response to Defendants' argument that, contrary to Delaware law, she is improperly seeking to hold Newtek directly liable for banc-serv's acts even though Newtek is not banc-serv's "individual owner who controls the company." In re Opus E., L.L.C., 480 B.R. 561, 570 (Bankr. D. Del. 2012). Nor does Plaintiff's argument remedy the Complaint's failure to contain even one relevant allegation about the three distinct entities in banc-serv's corporate structure that separate banc-serv from Newtek.

It is simply insufficient for Plaintiff to assert in her brief that she "alleged that Newtek (not an independent subsidiary with separate management)" took certain actions. (Pl.'s Br. 8.) Merely making an unfounded allegation does not make it so. And Plaintiff cannot legitimately be heard to assert that she is "unaware" of the corporate structure of banc-serv—a company for which she served as President and Chief Executive Officer and a member of the Board of Managers. (Id.) Plaintiff suggests as an excuse that she relied on a statement previously made by Holdco and Newtek in a separate proceeding. (Id. 8 n.1.) But, as Plaintiff's own description

6

makes clear, the statement previously made by Holdco and Newtek accurately reflects banc-serv's corporate structure.  (Id.)  It is equally unavailing for a litigant to make allegations in a pleading and then claim to be "unaware" of public facts that are available to any person with an internet connection, let alone someone who was the senior-most executive officer of the company.

It is also insufficient for Plaintiff to assert in her brief that the Complaint alleges that certain actions were taken by "Newtek" or "Newtek's CEO."  (Pl.'s Br. 9.)  Again Plaintiff cannot legitimately claim to be "unaware" that any such alleged actions—even if true—would have been undertaken by banc-serv's Board of Managers and banc-serv's Chairman of the Board.  As is expressly set forth in the Employment Agreement, Plaintiff reported directly to banc-serv's Chairman of the Board and took direction from banc-serv's Board of Managers.  (Compl., Exh. 1 ¶ 2.)  Plaintiff cannot legitimately claim to be "unaware" of these facts.

Second, Plaintiff's brief does nothing to cure the Complaint's failure to allege the "exceptional circumstances" that Delaware law requires to pierce the corporate veil.  Rather, the list of alleged actions that Plaintiff references in her brief consists of little more than business decisions and other events with which Plaintiff apparently disagreed.  (Pl.'s Br. 9.)  And none of the referenced allegations—even if true—come close to demonstrating that Newtek had such "complete" and "exclusive" "domination and control" over banc-serv that banc-serv was nothing but "a sham" with "no independent significance of its own" other than "as a vehicle for fraud." Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood, 752 A.2d 1175, 1183 (Del. Ch. 1999).

Plaintiff cavalierly asserts in her brief that the Complaint alleges six of the elements considered by Delaware courts before piercing the corporate veil—but, tellingly, she does not

7

provide a citation to a single fact allegation in the Complaint for even one of the purported elements. (Pl.'s Br. 9-10.) Contrary to Plaintiff's assertions in her brief, the Complaint does not allege that banc-serv was undercapitalized, that banc-serv failed to observe corporate formalities, that banc-serv failed to pay dividends, that banc-serv was insolvent, that banc-serv's funds were siphoned, or that banc-serv was merely a facade for Newtek. In order for Plaintiff to allege that Newtek should be held liable for banc-serv's acts, Delaware law requires Plaintiff to allege "<u>facts</u> which demonstrate that the entities operated as one entity." In re Simplexity, LLC, No. 14-10569(KG), 2017 WL 65069, at *9 (Bankr. D. Del. Jan. 5, 2017) (emphasis added). Nowhere does Plaintiff make such allegations, because she cannot.

Because Plaintiff fails to allege a factual basis to pierce the corporate veil, Count III of the Complaint should be dismissed.

### IV. Plaintiff Fails to Allege Tortious Interference With Contract

Defendants' opening brief demonstrated that the Complaint does not allege the elements necessary to state a claim for tortious interference with contract, including Plaintiff's failure to set forth factual allegations from which a Court could reasonably infer that any alleged conduct was unjustified. (Def.'s Br. 18-20.) Plaintiff asserts in her brief that she has adequately alleged this claim—provided that the Court gives her "the benefit of imagination." (Pl.'s Br. 12.) But Plaintiff's allegations are insufficient, and the case that Plaintiff relies upon in her brief makes clear why this is so.

In Duty v. Boys & Girls Club of Porter Cty., 23 N.E.3d 768, 775 (Ind. Ct. App. 2014), the plaintiff alleged that the defendant tortiously interfered with a contract when he persuaded the plaintiff's employer to fire her as revenge because plaintiff previously had accused the defendant of financial improprieties. The plaintiff alleged in her complaint that it was "vindictive" for the defendant to retaliate against her; the defendant had no current relationship

8

with the plaintiff's employer, but he convinced the employer to fire the plaintiff based on the perceived damage that she had caused to the defendant's reputation.  Id.  In other words, the plaintiff's allegations—while scant—posited a set of facts that could plausibly be interpreted as alleging that the defendant acted maliciously with the intention of harming the plaintiff.

Here, in stark contrast, Plaintiff's Complaint includes little more than the conclusory allegation that Newtek's acts were "completely unjustified." (Compl. ¶ 90.)  In an attempt to bolster this bare allegation, Plaintiff asserts in her brief that Newtek "intentionally" decreased banc-serv's net income and "artificially" decreased banc-serv's net revenue in order to cause banc-serv to breach the Employment Agreement by not paying amounts allegedly due. (Pl.'s Br. 11.)  Thus, Plaintiff asserts in her brief that Newtek "artificially ma[d]e banc-serv appear to be a losing proposition" in order to "create a situation whereby Ms. Agee did not receive the compensation to which she was contractually entitled." (Id.)

Unlike Duty, these assertions do not posit a set of facts that provide a plausible basis to conclude that Newtek acted maliciously in order to harm Plaintiff.  In a misguided effort to concoct a set of facts that might appear to be "unjustified," Plaintiff posits a convoluted scenario that is not alleged in the Complaint, and that would take more than "the benefit of imagination" to be plausible even if it were.

In a further effort to rehabilitate this claim, Plaintiff's brief asserts dramatically that "Newtek went so far as to … force banc-serv to default on its rent, so that Ms. Agee would be stuck with the bill." (Id. (emphasis added).)  But in her Complaint, Plaintiff alleges no such thing. Rather the Complaint alleges merely that Plaintiff was told by a third party that banc-serv "ha[d] failed to pay its rent" for May-July 2018, and that the landlord "demanded payment" from Plaintiff pursuant to her guarantee.  (Compl. ¶¶ 65-66.)  Besides the complete irrelevance of

these allegations to her claims, there is simply no way that a Court could infer from these allegations—i.e., that banc-serv had failed to pay three months of rent and that the landlord sought payment pursuant to a contract with Plaintiff—that Newtek acted with disinterested malevolence directed solely at injuring Plaintiff.

The totality of the allegations in the Complaint amount to little more than a series of alleged business decisions and other events that Plaintiff asserts are tantamount to a breach of her Employment Agreement. These allegations are insufficient to infer that the alleged actions—even if true—were taken maliciously and solely to injure Plaintiff without a legitimate business justification.

Because Plaintiff fails to state a cause of action for tortious interference with contract, Count IV of the Complaint should be dismissed.

### V.     Plaintiff Fails to Allege a Fraudulent Transfer

Defendants' opening brief demonstrated that the Complaint fails to allege a cause of action for fraudulent transfer because Plaintiff did not identify a transfer or obligation that is alleged to be voidable, and Plaintiff did not allege the elements necessary to state a claim under the applicable statutes. (Def.'s Br. 20-23.)

At the outset, Defendant notes that Plaintiff makes no argument in her brief in support of a claim for constructive fraud under Ind. Code § 32-18-2-15, nor does she provide any response to Defendants' arguments that the Complaint fails to state a claim under that statute. Thus, in addition to Plaintiff's express disavowal of a claim for appointment of a receiver under Ind. Code § 32-30-5-1(5) (Pl.'s Br. 14), any claim that Plaintiff may have asserted under Ind. Code § 32-18-2-15 should be dismissed as well.

Plaintiff's brief makes the remarkable assertion that she should be able to pick and choose whether she can make a claim under Ind. Code § 32-18-2-14(a)(1) or § 32-18-2-14(a)(2)

depending on what "discovery bears out." (Id. 12-13.) However, the allegations in the Complaint demonstrate that Plaintiff fails to state a claim under either section of the statute.

Whether Plaintiff alleges actual fraud under Section 14(a)(1) or constructive fraud under Section 14(a)(2), she is required to identify "a transfer" or "an obligation" that she alleges is voidable. Ind. Code §§ 32-18-2-14(a)(1)-(a)(2) (emphasis added). In her Complaint, Plaintiff does not identify even one transfer (or obligation) that is the subject of this claim, referring generically only to "transfers" and "obligations" and "[a]ll such fraudulent transactions." (Compl. ¶¶ 93-94, 98.) This claim must be dismissed for this reason alone.

In her brief, Plaintiff now asserts for the first time that she intends to base this claim on an alleged transfer of $400,000 that took place "[a]t the end of 2016." (Pl.'s Br. 13-14; Compl. ¶ 38.) Plaintiff's brief fails, however, to remedy the deficient allegations in her Complaint. See Tinnin-Bey v. Indianapolis Public Schools, 1:14-cv-00944-RLY-DML, 2015 WL 6394220, at *6 n.3 (S.D. Ind. Oct. 21, 2015) (citing Anderson v. Donahoe, 699 F.3d 989, 997 (7th Cir. 2012)).

In support of her claim under Section 14(a)(1), Plaintiff asserts in her brief that she has alleged three (of the nine) "badges of fraud" set forth in Ind. Code § 32-18-2-14(b). First, Plaintiff asserts that the alleged $400,000 transfer "was of substantially all of [banc-serv's] assets." (Pl.'s Br. 13.) But there is no such allegation in the Complaint, which contains only the unrelated allegation that banc-serv's "net income decreased." (Compl. ¶ 42.) There is simply no allegation whatsoever in the Complaint regarding banc-serv's assets in relation to this alleged transfer. Second, Plaintiff asserts that banc-serv "removed or concealed assets." (Pl.'s Br. 13.) Again, there is no such allegation in the Complaint. Indeed, Plaintiff states in her brief that she bases this assertion on her statement that Newtek has access to its proprietary referral management platform. (Id.; Compl. ¶¶ 32-34.) Plaintiff does not—nor could she—provide any

11

explanation as to how Newtek's access to its referral management platform could be understood to be evidence that Newtek removed or concealed banc-serv's assets. Finally, Plaintiff asserts that banc-serv "was insolvent or became insolvent shortly after" the alleged $400,000 transfer. (Pl.'s Br. 13.) Once again, there is no such allegation in the Complaint. Rather, Plaintiff states in her brief that she bases this assertion on her allegation that, in July 2018, a third party told her that banc-serv was "weighing its option to shutter … operations" and that banc-serv had "failed to pay its rent" for May-July 2018. (Id. 13-14; Compl. ¶¶63, 65.) These three asserted "badges of fraud" cannot support a claim of actual fraud under Ind. Code § 32-18-2-14(a)(1).

Plaintiff's claim for constructive fraud under Section 14(a)(2) is similarly deficient. In order to state this claim, Plaintiff must allege that <u>when</u> banc-serv made the transfer (or incurred the obligation) banc-serv "<u>was engaged</u> or <u>was about to engage</u> in a business or a transaction for which [its] remaining assets … were unreasonably small," or that banc-serv "<u>intended</u> to incur or <u>believed or reasonably should have believed</u> that [it] would incur debts beyond [its] ability to pay." Ind. Code § 32-18-2-14(a)(2)(A)-(B) (emphasis added). There are no such allegations in the Complaint. Nowhere does Plaintiff allege that when the alleged $400,000 transfer (or the alleged use of banc-serv employees) took place, that banc-serv "was engaged" or "was about to engage" in a transaction for which its remaining assets "were unreasonably small" under Section 14(a)(2)(A), or that banc-serv "intended to incur" or "believed" or "should have believed" that it would incur debts beyond its ability to pay as they became due under Section 14(a)(2)(B). Not only does Plaintiff fail to allege any facts in support of the temporal elements of these claims, Plaintiff also fails to allege that banc-serv's assets were unreasonably small in relation to the transaction or that banc-serv incurred debts beyond its ability to pay them as they came due.

Rather, Plaintiff's brief asserts only that banc-serv did not pay (as opposed to was unable to pay) her salary and three months' rent long after the alleged transfer.

Because Plaintiff has failed to state a cause of action for fraudulent transfer, and Plaintiff has withdrawn her claim for the appointment of a receiver, Count V of the Complaint should be dismissed.

**VI.     Plaintiff's Asserted Corporate Employee's Lien is Invalid**

Defendants' opening brief demonstrated that Plaintiff's asserted Corporate Employee's Lien is ineffective and invalid against banc-serv because banc-serv is a limited liability company, and Ind. Code § 32-28-12-1 "applies only to corporations, which means it is ineffective and invalid against … a limited liability company." Fritz v. Coffey, No. 1:07-CV-115-TS, 2008 WL 2444552, at *4 (N.D. Ind. June 16, 2008).  (Def.'s Br. 23-25.)

Plaintiff's brief goes to great lengths in an attempt to convince this Court to reject a well-reasoned, 10-year-old decision from the Northern District of Indiana, which directly addressed the question at issue and which expressly rejected the argument Plaintiff makes here.  In order to avoid the unambiguous holding of a decision that is directly on point, Plaintiff is forced to stray very far afield and is left to rely on inapposite cases that address unrelated issues in the areas of shareholder derivative litigation and bankruptcy law.  (Pl.'s Br. 16-17.)  Plaintiff fails, however, to provide a sufficient reason to reject the Fritz Court's straight-forward reading of the plain language of the statute.

Plaintiff states that limited liability companies are "new creations of statute" in Indiana, while the Corporate Employee's Lien statute "has been around since before the turn of the century"—arguing, presumably, that the Indiana General Assembly has neglected to include limited liability companies within the coverage of the Corporate Employee's Lien statute by oversight or inertia.  (Id. 15.)  But Plaintiff ignores the Fritz Court's analysis, which shows that

13

limited liability companies and other business entities are expressly included in other Indiana lien statutes. Fritz, 2008 WL 2444552, at *4 (citing Indiana lien statutes that expressly apply to limited liability companies).

Moreover, Plaintiff is simply wrong that the Corporate Employee's Lien statute is an antiquated statute that has yet to take account of the modern development of limited liability companies. The Indiana General Assembly recodified the Corporate Employee's Lien statute in its entirety in 2002, which was nearly a decade after limited liability companies were introduced by the Indiana business flexibility act in 1993. See Title 32—Recodification, 2002 Ind. Legis. Serv. P.L. 2-2002 (S.E.A. 57). Thus, the conclusion is inescapable that "the legislature has included limited liability companies in other lien-related statutes but has not (for whatever reason) done so in the lien statute at issue in this case." Fritz, 2008 WL 2444552, at *5.

In the end, Plaintiff is left to assert in her brief that "although not alleged in her Complaint, Ms. Agee could amend her Complaint" to allege that banc-serv is "no different than a corporation." (Pl.'s Br. 16.) This assertion is utterly untenable. Plaintiff cannot evade the unambiguous language of a statute with the expedient ploy of alleging that a limited liability company is NOT a limited liability company. As with so many of the allegations in Plaintiff's Complaint—and Plaintiff's attempts to rehabilitate those allegations in her brief—simply stating that Plaintiff could amend her Complaint to add an unfounded fact does not cure the deficiency, and allegations in the Complaint that have no basis in fact cannot support Plaintiff's causes of action.

Because Plaintiff fails to state a claim under Ind. Code § 32-28-12-1, Count VI of the Complaint should be dismissed, and Plaintiff should be ordered to remove the asserted lien.

## **CONCLUSION**

Plaintiff's Complaint fails to state a claim upon which relief can be granted. Accordingly, this action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

        Respectfully submitted,

        *s/ Andrew M. McNeil*
        Andrew M. McNeil (#19140-49)

        BOSE McKINNEY & EVANS LLP
        111 Monument Circle, Suite 2700
        Indianapolis, In 46204
        (317) 684-5000; (317) 684-5173 (Fax)
        amcneil@boselaw.com

        Eliot Kirshnitz (Admitted pro hac vice)

        Newtek Business Services Corp.
        1981 Marcus Avenue, Suite 130
        Lake Success, NY 11042
        Tel  (212) 273-8186
        Fax (516) 344-4253
        ekirshnitz@newtekone.com

        *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

     I hereby certify that on September 28, 2018, a copy of the foregoing "Reply in Support of Defendants' Motion to Dismiss" was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        Jonathan A. Bont, Esq.
        Stephanie L. Grass, Esq.
        Paganelli Law Group
        10401 North Meridian Street, Suite 450
        Indianapolis, IN 46290
        jon@paganelligroup.com
        Stephanie@paganelligroup.com

                              s/*Andrew M. McNeil*
                              Andrew M. McNeil

3510982