UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KERRI L. AGEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-02641-JRS-TAB |
| | ) | |
| NEWTEK BUSINESS SERVICES | ) | |
| HOLDCO 5, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## Order on Motion to Dismiss and Motion to Stay

Plaintiff Kerri L. Agee started ADR Partners, LLC d/b/a banc-serv Partners, LLC,

a lending service provider for banks and financial institutions. Defendant Newtek

Business Services Corp. through a subsidiary bought Agee's 100% membership inter-

est in banc-serv, and the parties entered into an employment agreement. Agee al-

leges Newtek has breached that agreement and brings claims for violations of New

York Labor Law, breach of contract, piercing the corporate veil, and tortious interfer-

ence with contract. She also brings a claim to set aside alleged fraudulent transfers

and to enforce a lien under Indiana law.

This case was originally filed in state court. Defendants properly removed it un-

der 28 U.S.C. § 1441(a). The Court has subject-matter jurisdiction on the basis of

diversity of citizenship of the parties. 28 U.S.C. § 1332(a).

Defendants filed a motion to dismiss for failure to state a claim under Fed. R. Civ.

P. 12(b)(6). Plaintiff then filed a motion to stay this litigation pending disposition of

a criminal case against her. She later filed a voluntary chapter 7 bankruptcy petition. Both the criminal case and the bankruptcy case are currently pending. Having considered the motions, the Court decides as follows:

*The Complaint*

Plaintiff Kerri L. Agee started banc-serv, a lending service provider in 2002. (Compl. ¶ 1, ECF No. 1-2.) Banc-serv assists banks and other lenders in administering small business loans through the United States Small Business Administration. Defendant Newtek provides business lending services. Newtek became interested in acquiring banc-serv. (Compl. ¶ 2, ECF No. 1-2.) Agee agreed to sell banc-serv to Newtek for an up-front payment of money and the promise of future income, including salary and commission on loans and other services generated to Newtek from banc-serv's client base. (Compl. ¶ 22, ECF No. 1-2.)

On or about June 24, 2016, Newtek Business Services Holdco 5, Inc. ("Holdco"), a wholly owned subsidiary of Newtek Business Services Corp. ("Newtek"), purchased 100% ownership of the membership interests in banc-serv from Agee, and Agee entered into an employment agreement with banc-serv (the "Employment Agreement"), which was amended on or about November 15, 2016 (Compl. ¶¶ 1, 4–5, 24, 27, ECF No. 1-2.)[1] A true and correct copy of the Employment Agreement, with its amendment, is attached to the Complaint as Exhibit 1. The Employment Agreement refers to Agee as the "Executive" and provides that she is to be employed as an "executive

---

[1] ADR Partners, LLC d/b/a banc-serv Partners, LLC entered into the agreement with Agee. (Compl., Ex. 1, ECF No. 1-2.)

officer in the capacity of President and Chief Executive Officer." (Compl. ¶ 28 & Ex. 1, ECF No. 1-2.) The Employment Agreement further provides that Agee:

> shall render such administrative and management services for the Company and its subsidiaries as are currently rendered and as are customarily performed by persons situated in a similar executive capacity and consistent with the duties of a President and Chief Executive Officer.

(Compl., Ex. 1, ¶ 2, ECF No. 1-2.) Under the agreement, Agee "shall report to the Chairman of the Board." (*Id.*) The agreement also provides for base compensation for Agee of a salary of $275,000 per annum as well as cash bonuses and incentive compensation. (Compl. ¶ 29 & Ex. 1 ¶¶ 3–4, ECF No. 1-2.)

Count I of the Complaint purports to state a claim under New York Labor Law for wages as a "commission salesman," a severance payment, and reimbursement for business expenses, along with attorney's fees, interest, and liquidated damages. *See* New York Labor Law §§ 191-c, 198-c, 191(3), and 198(1-a). (Compl. ¶¶ 68–76, ECF No. 1-2.) Count II alleges breach of contract, namely the June 24, 2016, Employment Agreement between Agee and banc-serv. (Compl. ¶¶ 77–81, ECF No. 1-2.) The Complaint alleges adequate performance under the Employment Agreement by Agee, banc-serv's breach of the agreement, and damages to Agee due to that breach. Count III of the Complaint asserts that "Newtek exercised such control over banc-serv . . . that banc-serv . . . became a mere instrumentality of Newtek" and Newtek should be held "liable for any judgment against banc-serv," thus seeking to pierce the corporate veil. (Compl. ¶¶ 83, 85, ECF No. 1-2.)

Count IV attempts to allege a claim for tortious interference with contract in claiming that Newtek caused banc-serve to enter into and then breach the Employment Agreement with Agee. (Compl. ¶¶ 86–91, ECF No. 1-2.) It is alleged that Newtek was unjustified in causing banc-serv to breach the agreement. (Compl. ¶ 90, ECF No. 1-2.) Count V alleges that Newtek has "made transfers" and "caused banc-serv to incur obligations" and attempts to state a claim to set aside fraudulent transfers and appoint a receiver over banc-serv under Indiana Code § 32-30-5-1(5) to accomplish that purpose. (Compl. ¶ 93, ECF No. 1-2.) It is alleged that Newtek acted "with the intent to hinder, delay, or defraud banc-serv's creditors," that Newtek "caused banc-serv to incur obligations without receiving reasonably equivalent value in exchange," "caused banc-serv to incur debts beyond its ability to pay," and "caused banc-serv to become undercapitalized," resulting in banc-serv's insolvency or imminent danger of insolvency. (Compl. ¶¶ 93–97, ECF No. 1-2.) Lastly, the Complaint purports to state a claim to enforce Agee's lien under Indiana Code § 32-38-12-1 *et seq.* on banc-serv's property and earnings. (Compl. ¶¶ 101–03, ECF No. 1-2.)

## Discussion

### A. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a Rule 12(b)(6) motion, the court takes the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Orgone Capital III, LLC v. Daubenspeck*, 912

F.3d 1039, 1044 (7th Cir. 2019). However, the court need not accept as true conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "may consider documents attached to the pleadings so long as the documents are referred to in the complaint and central to the plaintiff's claims." *Doe v. Columbia Coll. Chi.*, No. 18-1869, 2019 WL 3796000, at *2 (7th Cir. Aug. 13, 2019). "[I]f a plaintiff pleads facts that show [her] suit [is] barred . . . , [she] may plead [her]self out of court under a Rule 12(b)(6) analysis." *Orgone Capital*, 912 F.3d at 1044 (quotation and citation omitted); *see also Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (on a motion to dismiss "district courts are free to consider 'any facts set forth in the complaint that undermine the plaintiff's claim'") (quotation and citation omitted).

A plaintiff alleging fraud faces heightened pleading requirements. *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019). Under Rule 9(b) of the Federal Rules of Civil Procedure, "a party alleging fraud . . . 'must state with particularity the circumstances constituting fraud . . . ,' although '[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" *Id.* (quoting Rule 9(b)). "This generally means 'describing the "who, what, when, where, and how" of the fraud.'" *Id.* (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)).

### 1. New York Labor Law Claims

Count I of the Complaint purports to state a claim under New York Labor Law for wages as a "commission salesman," a severance payment, and reimbursement for business expenses, along with attorney's fees, interest, and liquidated damages.

Agee alleges that under New York Labor Law § 191, a "commission salesman" is to be paid "wages, salary, drawing account, commissions and all other monies earned or payable in accordance with the agreed terms of employment . . . ." (Compl. ¶ 71, ECF No. 1-2.) "Commission salesman" is defined in subdivision (6) of the Labor Law to mean "any employee whose principal activity is the selling of any goods, wares, merchandise, services, real estate, securities, insurance or any article or thing and whose earnings are based in whole or in part on commissions." N.Y. Labor Law §190(6). The Labor Law excludes from this definition "an employee whose principal activity is of a supervisory, managerial, executive, or administrative nature." *Pachter v Bernard Hodes Group, Inc.*, 891 N.E.2d 279, 282 (N.Y. 2008) (quoting Labor Law §190(6)). As Defendants argue, "New York courts have looked to an employee's title when determining whether an employee qualifies as an executive under Article 6." *Lauria v. Heffernan*, 607 F. Supp. 2d 403, 408 (E.D.N.Y. 2009) (citation omitted). But an employee's job functions and responsibilities matter as well. *Id.*

Defendants argue that Agee cannot state a claim under New York Labor Law because she was employed in an executive or managerial capacity. Agee responds that the Complaint alleges that Defendants did not recognize and undermined what would have otherwise been her executive and managerial functions. She maintains that the question is whether her "principal activity" was of a supervisory, managerial, executive, or administrative nature.

Several paragraphs of the Complaint and the Employment Agreement state that Agee is an "Executive." (*See, e.g.*, Compl. ¶ 28, Ex. 1, preamble (identifying Agee as

"the "Executive""), ¶ 2 ("The Executive is employed as the President and Chief Executive Officer of the Company. The Executive shall render such administrative and management services . . . as are customarily performed by persons situated in a similar executive capacity and consistent with the duties of a President and Chief Executive Officer."), ECF No. 1-2.) Agee reported to the Chairman of the Board (Compl., Ex. 1 ¶ 2, ECF No. 1-2), and earned a salary of $275,000 per year, (*id.* ¶ 3). These allegations seem to indicate that Agee was employed in an executive capacity as the term is used under New York Labor Law. However, the Complaint also suggests, albeit without express allegations, that Agee was a "commission salesman" and was entitled to payment of a sales commission under New York Labor Law 191(1-c). (*See* Compl. ¶¶ 44, 70–71, ECF No. 1-2.) And other paragraphs of the Complaint state that Newtek's President, Chairman and Chief Executive Officer told Agee "that her job was just to sell, and not to directly manage the Company." (Compl. ¶ 44, ECF No. 1-2.) While Agee's job title, salary, and duties as stated in the Employment Agreement would suggest that she is an "executive" and not a "commission salesman" and is not covered by Article 6 of the Labor Law, there are enough allegations to suggest that her actual job functions and responsibilities were not of an executive nature. Thus, the Court finds that the Complaint sufficiently states a claim under Labor Law 191-c. The determination of whether Agee was or was not an executive will have to await further development through discovery.

The Complaint also alleges that Agee is entitled to reimbursement for legitimate business expenses under Labor Law § 198-c. (Compl. ¶¶ 72, 75, ECF No. 1-2.) The

statute provides that "this section shall not apply to any person in a bona fide executive . . . , capacity whose earnings are in excess of nine hundred dollars a week." N.Y. Labor Law § 198-c(3); *see also Pachter*, 891 N.E.2d at 282. Defendants argue that Agee is not entitled to assert this claim because she was in an executive capacity and her earning exceeded $900 per week. While the Employment Agreement indicates that Agee's base compensation was $275,000 per year, which far exceeds the $900 per week ceiling, and also states that Agee is employed as an "Executive," other allegations in the Complaint suggest that she was not actually employed in such a capacity. At this point, Agee has made sufficient allegations to state a claim for business expenses under Labor Law § 198-c.

The Complaint further alleges that Agee is entitled to wages under Labor Law §191(3) "not later than the regular pay day for the pay period during which [her employment] termination occurred." N.Y. Labor Law § 191(3). (Compl. ¶ 73, ECF No. 1-2.) The Complaint alleges that "[u]nder New York Labor Law § 191(3)[, i]f employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred[.]" (Compl. ¶ 73, ECF No. 1-2.) The Complaint further alleges that banc-serv has failed to pay Agee's "Severance Payment," (Compl. ¶ 75, ECF No. 1-2), which presumably is her claim for wages due on termination under Labor Law § 191(3).

As before, Defendants argue that as an "executive," Agee is excluded from the categories of workers to which Labor Law § 191 applies—manual workers, railroad workers, commission salespersons, and clerical or other workers. Defendants

maintain that Agee did not directly respond to their motion with respect to this claim. But she did. Defendants' argument as to why Agee failed to state a claim under § 191 is essentially the same as their argument with respect to whether she qualifies as a "commission salesman"—she is an executive and not covered. Agee's arguments in response to that claim apply equally to her claim under § 198-c—she maintains that she was not functioning as an executive.

Under New York law, "employees serving in an executive, managerial or administrative capacity do not fall under section 191 of the Labor Law and, as a result, those individuals are not entitled to statutory attorney's fees under section 198(1–a)[.]" *Pachter,* 891 N.E.2d at 283; *see also Henkel v. Wagner,* No. 12-cv-4098 (AJN), 2016 WL 1271062, at *9 (S.D.N.Y. Mar. 29, 2016) (stating "it is firmly established that § 191 is inapplicable to executives") (quotation and citation omitted). However, Agee has made sufficient allegations to state a claim under Labor Law § 191(3). Whether the evidence establishes that she was not employed in an executive capacity must await further factual development.

It necessarily follows from the fact that Agee has stated a claim under New York Labor Law sections 191-c, 198-c, and 191(3), that Agee has stated a claim to attorney's fees, prejudgment interest, or liquidated damages under New York Labor Law §198(1-a). *See, e.g., Contrera v. Langer,* 314 F. Supp. 3d 562, 569–70 (S.D.N.Y. 2018) ("The remedies of section 198 may not be invoked when the claim is in substance a contract claim to enforce the payment of obligations other than statutory wages.").

Agee has sufficiently stated her claims under the New York Labor Laws. The motion to dismiss is denied as to the claims in Count I.

## 2. Breach of Contract

Count II of the Complaint purports to state a claim for breach of contract. The Count incorporates the previous allegations and alleges that "banc-serv breached the Employment Agreement with Ms. Agee by and through the actions and inactions described above." (Compl. ¶ 79, ECF No. 1-2.) Agee alleges damages resulting from the breach. (Compl. ¶ 80, ECF No. 1-2.) Defendants argue that the conduct alleged in the Complaint cannot support a breach of contract claim under the terms of the Employment Agreement. In making this argument, they focus only on the allegations that Agee's duties were "diminished" or "restricted" "to those materially inferior to and inconsistent with her prior position and duties." (Compl. ¶¶ 43, 55, ECF No. 1-2.) Why Defendants focus solely on these allegations is unclear.

Because the Court's subject-matter jurisdiction is based on diversity, the Court would apply the forum state's choice of law rules to determine what state substantive law applies to the contract and tort claims. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). However, the parties have agreed that New York law governs the contract (*see* Defs' Br. 14–15 (citing New York law), ECF No. 11; Pl.'s Resp. 6 (same), ECF No. 14), so the Court need not conduct a choice-of-law inquiry. *See Division Six Sports, Inc. v. Finish Line, Inc.*, 928 F.3d 631, 635 (7th Cir. 2019). Besides, Indiana choice-of-law rules honor contractual stipulations as to the governing law, *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002), and the

Employment Agreement provides that it is governed by New York law. (Compl. ¶ 30 & Ex. 1 ¶ 16, ECF No. 1-2.)

As in other jurisdictions, under New York law, the essential elements of a breach of contract are: (1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of its contractual obligations, and (4) damages resulting from the breach. *Citigroup Fin. Prods. Inc. v. Tera Xtal Tech. Corp.*, No. 18-CV-4727 (JPO), 2019 WL 1986595, at *2 (S.D.N.Y. May 6, 2019). The Complaint has alleged the existence of a contract—the Employment Agreement (Compl. ¶ 78, ECF No. 1-2), Agee's performance, (Compl. ¶ 79) and banc-serv's breach, including changing her compensation from what she was entitled to under the Agreement, and banc-serv failing to pay her Severance Payment, Incentive Compensation, and Referral Bonus. (Compl. ¶¶ 55, 57–61, ECF No. 1-2.) Agee also has alleged that she suffered damages as a result of banc-serv's alleged breach. (Compl. ¶ 80, ECF No. 1-2.)

Therefore, Agee has sufficiently stated a claim for breach of contract under New York law. The motion to dismiss should be denied as to Count II.

### 3. *Piercing the Corporate Veil*

Count III asserts that "Newtek exercised such control over banc-serv . . . that banc-serv . . . became a mere instrumentality of Newtek" and Newtek should be held "liable for any judgment against banc-serv." (Compl. ¶¶ 83, 85, ECF No. 1-2.) Defendants argue Agee has not and cannot allege any facts necessary to pierce the corporate veil and Count III should be dismissed.

"[V]eil-piercing claims are governed by the law of the state of the corporation whose veil is sought to be pierced." *On Command Video Corp. v. Roti*, 705 F.3d 267, 272 (7th Cir. 2013). Defendants assert that banc-serv is a Delaware limited liability company and, therefore, the Court applies Delaware law in deciding whether to pierce the corporate veil. Plaintiff agrees that Delaware law applies, at least for purposes of the motion to dismiss. (Pl.'s Resp. 8, ECF No. 14.)

Under Delaware law, "[p]iercing the veil is limited to exceptional circumstances and requires alleging facts which demonstrate that the entities operated as one entity resulting in injustice or unfairness." *In re Simplexity, LLC*, Case No. 14–10569(KG), 2017 WL 65069, at *9 (Bankr. D. Del. Jan. 5, 2017). "[C]onclusory allegations are insufficient." *Id.* Delaware law allows for piercing the corporate veil where a company "is in fact a mere instrumentality or alter ego of its owner." *In re Opus East, L.L.C.,* 480 B.R. 561, 570 (Bkrtcy. D. Del. 2012).[2] "[T] o state a claim for piercing the corporate veil under an alter ego theory, [a plaintiff] must show (1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present." *Trevino v. Merscorp, Inc.,* 583 F. Supp. 2d 521, 528 (D. Del. 2008). "The alter ego theory [only] comes into play in piercing the corporate veil when one seeks to hold liable an individual *owner* who controls the [company]." *Opus East*, 480 B.R. at 570 (quoting *E. Minerals & Chems. Co. v. Mahan,* 225 F.3d 330, 333 n. 7 (3d Cir. 2000)).

---

[2] Piercing the veil is also allowed where there is fraud, but Agee has not relied on this alternate basis for piercing the veil, choosing instead to limit her response to whether she has alleged enough facts to state a claim for piercing the veil under the alter ego theory. (Pl.'s Resp. 8–10, ECF No. 14.)

Agee seeks to hold Newtek liable for banc-serv's conduct, but, as Defendants argue, Newtek is not an owner of banc-serv. Banc-serv's owner is LSP Holdco, which in turn is owned by Newtek Business Services Holdco 5 and Wilshire Holdings, which are both owned by Newtek. That the Complaint alleges Newtek Business Services Holdco 5 is a wholly owned subsidiary of Newtek is insufficient; the Complaint lacks any allegations about LSP Holdco or Wilshire Holdings that would permit piercing the corporate veil through the existing corporate layers. And the Complaint lacks any allegations about LSP Holdco's control over banc-serv. Agee also concedes that she was unaware that LSP Holdco is the single owner of banc-serv. (Pl.'s Resp. 8 n.1, ECF No. 14.)

Further, in deciding whether two entities are a "single economic entity" under the alter-ego theory, courts look to the following factors: "(1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders." *Trevino*, 583 F. Supp. 2d at 528–29 (citation omitted). No single factor is sufficient; rather, "'some combination' of factors is required and 'an overall element of injustice or unfairness must always be present, as well.'" *Id.* at 529 (quoting *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988)). Defendants maintain that the Complaint contains no such factual allegations. Agee responds by asserting that the Complaint alleged all but the sixth factor above. (Pl.'s Resp. 9,

ECF No. 14.)  However, she fails to identify any particular allegations in the Complaint to support her assertion.  (*See id.*)  Agee has not pleaded sufficient facts to support a finding that Newtek and banc-serv operated as a single economic entity.

Nor has Agee sufficiently alleged that injustice or unfairness result if banc-serv's corporate status is not disregarded.  Her response brief states that this case is "about 'injustice and unfairness'"" and asserts that "Newtek destroyed banc-serv."  (Pl.'s Resp. 10, ECF No. 14.)  But she fails to identify any factual allegation in the Complaint that would support such an assertion.  Therefore, Agee has failed to state a claim for veil-piercing and the motion to dismiss should be granted as to Count III.

### 4. Tortious Interference with Contract

Count IV of the Complaint alleges Newtek's tortious interference with Agee's Employment Agreement with banc-serv.  The parties agree that Indiana substantive law applies to the remaining tort claims in Counts IV through VI (*see* Defs.' Br. 18–25, ECF No. 11;  Pl.'s Resp. 10–17, ECF No. 14), so the Court need not conduct a choice-of-law analysis.  *See Division Six Sports*, 928 F.3d at 635.

The elements of a tortious interference with contract claim under Indiana law are: "(1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach."  *Levee v. Beeching*, 729 N.E.2d 215, 221 (Ind. Ct. App. 2000).  A "mere assertion that the defendant's conduct was unjustified" is insufficient.  *Duty v. Boys & Girls Club of Porter Cty.*, 23 N.E.3d 768, 775 (Ind. Ct. App.

2014). Rather, "the plaintiff must set forth factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified." *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000). "To satisfy the element of lack of justification, the breach must be malicious and exclusively directed to the injury and damage of another." *Duty*, 23 N.E.3d at 775; *see also Winkler v. V.G. Reed & Sons, Inc.,* 619 N.E.2d 597, 600–01 (Ind. Ct. App. 1993), *aff'd*, 638 N.E.2d 1228 (1994).

Even assuming the Complaint alleges that Newtek intentionally induced banc-serv's breach of contract, Defendants argue that Agee has failed to sufficiently allege that Newtek acted without justification. The Complaint alleges in conclusory fashion that "Newtek is completely unjustified in causing banc-serv to breach the Employment Agreement with Ms. Agee." (Compl. ¶ 90, ECF No. 1-2.) This conclusory allegation is insufficient, however. *See, e.g., Duty*, 23 N.E.3d at 775.

Agee responds that she has alleged facts to demonstrate that Newtek's conduct was unjustified and that it was solely directed to injuring her. She states that Newtek "artificially" made "banc-serv appear to be a losing proposition" to avoid paying her the compensation to which she was entitled. (Pl.'s Resp. 11, ECF No. 14.) She continues that "Newtek went so far as to allow/force banc-serv to default on its rent, so that Ms. Agee would be stuck with the bill." (*Id.*) And she states that "Newtek breached its Referral Promotion Agreement with banc-serv, in order to cause banc-serv to breach its agreement to pay Ms. Agee a Referral Bonus." (*Id.*) The paragraphs

of the Complaint that she cites for support, however, do not make such allegations. (See Compl. ¶¶ 54, 65–66.)

The Complaint fails to allege that Newtek acted maliciously and exclusively to injure Agee. It therefore fails to sufficiently allege the absence of justification and fails to state a claim of tortious interference with contract. The motion to dismiss should be granted as to Count IV.

### 5. *Request to Appoint a Receiver and Set Aside Fraudulent Transfers*

Count V requests the Court to appoint a Receiver under Indiana Code § 32-30-5-1(5) and set aside fraudulent transfers. The Complaint alleges generally that "Newtek has made transfers and caused banc-serv to incur obligations with the intent to hinder, delay, or defraud banc-serv's creditors, including Ms. Agee" (Compl. ¶ 93, ECF No. 1-2) and asks the Court to "set aside" "such fraudulent transactions." (Compl. ¶ 98, ECF No. 1-2). To do this, the Complaint asserts, the Court should appoint a receiver over banc-serv. (Compl. ¶ 99, ECF No. 1-2.)[3]

This claim is presumably based on Indiana's version of the Uniform Fraudulent Transfer Act ("UFTA"), which provides:

> Sec. 14. A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

---

[3] In her response brief, Agee states that she is not seeking appointment of a receiver at this time, however. (Pl.'s Resp. 14, ECF No. 14.)

> (A) was engaged or was about to engage in a business or a trans-
> action for which the remaining assets of the debtor were unrea-
> sonably small in relation to the business or transaction; or
> (B) intended to incur or believed or reasonably should have be-
> lieved that the debtor would incur debts beyond the debtor's abil-
> ity to pay as the debts became due.

Ind. Code § 32–18–2–14. The next section of the statute provides:

> Sec. 15. A transfer made or an obligation incurred by a debtor is fraud-
> ulent as to a creditor whose claim arose before the transfer was made or
> the obligation was incurred if:
> (1) the debtor made the transfer or incurred the obligation without
> receiving a reasonably equivalent value in exchange for the transfer
> or obligation; and
> (2) the debtor:
> (A) was insolvent at that time; or
> (B) became insolvent as a result of the transfer or obligation.

Ind. Code § 32–18–2–15. These sections set forth two causes of action: actual fraud

under § 32–18–2–14(1) and constructive fraud under § 32–18–2–14(2) and § 32–18–

2–15. *See, e.g.*, *Cmedia Servs., LLC v. Rogers*, 1:15-cv-00435-SEB-MJD, 2015 WL

5022167, at *6 (S.D. Ind. July 31, 2015) (quoting Ind. Code § 32–18–2–14(1)), *adopt-

ing report and recommendation* 2015 WL 5022963 (S.D. Ind. Aug. 25, 2015).

Defendants argue that the Complaint fails to state a claim as to actual fraud and

constructive fraud. Plaintiff did not respond to their arguments concerning construc-

tive fraud under Indiana Code § 32–18–2–15. The Court therefore understands that

she is not asserting any claim for constructive fraud under that provision.

Turning to actual fraud, the determination of whether a transfer was made with

"actual intent" to defraud is guided by consideration of the "badges of fraud," which

include:

(1) the transfer of property by a debtor during the pendency of a suit; (2) a transfer of property that renders the debtor insolvent or greatly reduces his estate; (3) a series of contemporaneous transactions which strip a debtor of all property available for execution; (4) secret or hurried transactions not in the usual mode of doing business; (5) any transaction conducted in a manner differing from customary methods; (6) a transaction whereby the debtor retains benefits over the transferred property; (7) little or no consideration in return for the transfer; and (8) a transfer of property between family members.

*Continental Cas. Co. v. Symons*, 817 F.3d 979, 988 n. 1 (7th Cir. 2016) (quoting *Otte v. Otte*, 655 N.E.2d 76, 81 (Ind. Ct. App. 1995)). Agee argues that the badges of fraud are relevant only if she is proceeding on an actual intent claim under Indiana Code §32-18-2-14(a)(1), and she suggests that she "will continue to have that avenue of relief available to her in the event that discovery bears out further evidence of 'actual intent.'" (Pl.'s Resp. 12–13, ECF No. 14.) Nonetheless, the Complaint must sufficiently state a claim for actual fraud to survive a motion to dismiss. Agee cannot merely await developments in discovery. And the Complaint does not allege any facts that would support a finding of the presence of a badge of fraud.

Besides, Federal Rule of Civil Procedure 9(b) applies to Agee's fraudulent transfer claim. The Complaint therefore must allege the "who, what, when, where, and how" of the fraud. *See Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019). The Complaint fails to do so; the vague allegations of "transfers" and "obligations" are insufficient. (*See* Compl. ¶¶ 93–94, ECF No. 1-2.) The allegations in Agee's Complaint do not provide the "who, what, when, where, and how" of the alleged fraudulent transfers.

In her response brief, Agee argues that the fraudulent transfer claim is based on an alleged transfer of $400,000 "[a]t the end of 2016" as a distribution to shareholders/Newtek. (Pl.'s Resp. 13–14, ECF No. 14.) However, Agee may not amend her complaint through arguments in her response brief. *See, e.g.*, *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) (summary judgment brief). Agee further argues that she has alleged a transfer of substantially all of banc-serv's assets, that banc-serv removed or concealed assets, and that banc-serv was insolvent or became insolvent shortly after the $400,000 transfer. (Pl. Resp. 13, ECF No. 14.) But the paragraphs of the Complaint on which she relies do not make such allegations. And Agee argues that she has alleged sufficient facts to state a claim under Indiana Code § 32-18-2-14(a)(2) (Pl.'s Resp. 14, ECF No. 14), but the cited paragraphs of the Complaint do not support her position.

The Complaint has failed to state a claim for fraudulent transfer and Plaintiff does not now seek the appointment of a receiver. Therefore, the motion to dismiss should be granted as to Count V.

### 6. *Claim to Enforce Lien*

Agee filed a notice of intent to hold a lien on banc-serv's property and earnings based on which she alleges to have acquired a lien under Indiana Code § 32-28-12-1 *et seq.* (Compl. ¶¶ 101, Ex. 3, ECF No. 1-2.) Count VI of the Complaint purports to state a claim to enforce that lien. (Compl. ¶¶ 100–03, Ex. 3, ECF No. 1-2.)

Under Indiana law, employees of a corporation doing business in Indiana "may have and hold a first and prior lien . . . for all work and labor done and performed by

the employees for the corporation from the date of the employees' employment by the corporation" Ind. Code § 32–28–12–1(a). As another district court in the Seventh Circuit has held, by the express terms of the statute, this lien "applies only to corporations, which means it is ineffective and invalid against . . . a limited liability company." *Fritz v. Coffey*, No. 1:07-CV-115-TS, 2008 WL 2444552, at *4 (N.D. Ind. June 16, 2008). As the *Fritz* court reasoned, "[t]he plain text mentions only 'corporations' and includes no references to other business entities in general or particular examples, such as limited liability companies or partnerships. This approach is reinforced by the inclusion of limited liability companies and other business entities in other Indiana lien statutes." *Id.*

Banc-serv, however, is not a corporation; it is a limited liability company. Agee argues that the law is dated, that LLCs are "a relatively new creations of statute," (Pl.'s Resp. 15, ECF No. 14 ), and the Court should extend its protection to LLCs. Agee cites no case interpreting the lien statute in this manner, and the Court is unaware of any such authority. Also, as noted by the *Fritz* court, the Indiana legislature has included limited liability companies in other lien-related statutes, but did not include LLCs in this statute. 2008 WL 2444552, at *4. Furthermore, under Indiana law, a court attempts to give effect to legislative intent only when the statute is ambiguous; the employees' lien statute is not ambiguous: it applies only to employees of corporations. Agee's employee's lien is invalid and ineffective, and she has failed to state a claim to enforce an employee's lien. So the motion to dismiss should be granted as to Count VI.

B. *Motion to Stay*

In seeking a stay of these proceedings pending disposition of her criminal case, Plaintiff cites authority in which the defendant in a civil case has been criminally charged. Though Agee has been charged criminally, she is not the defendant in this case—she is the plaintiff who initiated this action, and she is in a position to dismiss it without prejudice if she wishes. Short of dismissal, Agee may invoke her Fifth Amendment privilege on a document-by-document or question-by question basis. And while this civil case and the criminal case against Agee may touch on some of the same facts, they do not appear to "involve the same subject matter." *See Am. Senior Communities, LLC v. Burkhart*, Case No. 1:17-cv-03273-TWP-DML, 2019 WL 415614, at *3 (S.D. Ind. Feb. 1, 2019). This case alleges breach of contract and related claims arising from Agee's employment with banc-serv from June 2016 through April 2018, whereas the criminal case against her involves a charged conspiracy to defraud the U.S. Small Business Administration and other crimes with the specific charged conduct occurring from April 2009 through April 2014. Therefore, Agee's motion to stay is denied.

C. *Leave to Amend*

Defendants' motion seeks dismissal with prejudice. Under the Federal Rules, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[U]nless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted," the Court should grant leave to amend following dismissal of the first complaint. *Tate v. SCR Med. Transp.*, 809 F.3d 343,

346 (7th Cir. 2015) (quotation and citation omitted). Here, it cannot be said that it is certain that any amendment would be futile or otherwise unwarranted. Indeed, Agee's response brief alludes to factual allegations that may suffice to state claims that are not sufficiently stated in her Complaint. Therefore, Agee is allowed twenty-one days within which to amend her complaint as to the claims that presently fail to state a claim.

*Conclusion*

Defendants' motion to dismiss for failure to state a claim (ECF No. 10) is **granted in part and denied in part** as follows:

The motion is **granted** as to Newtek's liability for banc-serv's conduct (Count III); the claim for tortious interference with contract (Count IV); the request to appoint a receiver and to set aside fraudulent transfer (Count V); and the claim to enforce a lien (Count VI); and these claims are **dismissed without prejudice**. Plaintiff has twenty-one days within which to file an amended complaint to correct the deficiencies in her complaint as to these claims.

The motion is **denied** as to the claims under New York Labor Law (Count I), and the claim for breach of contract (Count II).

Plaintiff's motion to stay (ECF No. 30) is **denied**.

**SO ORDERED.**

Date:  9/27/2019

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jonathan A. Bont
PAGANELLI LAW GROUP
jon@paganelligroup.com

Stephanie Lauren Grass
PAGANELLI LAW GROUP
stephanie@paganelligroup.com

Eliot Kirshnitz
NEWTEK BUSINESS SERVICES, CORP.
ekirshnitz@newtekone.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
amcneil@boselaw.com